32333. AUSTIN *v.* CITY OF ATLANTA.

DECIDED APRIL 30, 1949.

*E. E. Moore Jr., S. S. Robinson*, for plaintiff in error.
*J. C. Savage, J. C. Murphy, J. M. B. Bloodworth, J. E. Feagin*, contra.

MacINTYRE, P. J.   The defendant, LeRoy Austin, was arrested and tried in the Recorder's Court of the City of Atlanta for violating the following ordinance (Code, City of Atlanta, 1942, § 66-201): "It shall be unlawful for any person to act in a violent, turbulent, quarrelsome, boisterous, indecent or disorderly manner, or to use profane, vulgar or obscene language, or to do anything tending to disturb the good order, morals, peace or dignity of the city." The defendant was convicted, and petitioned the Superior Court of Fulton County for a writ of certiorari. His petition was sanctioned, but upon a hearing the court overruled the certiorari, and that judgment is excepted to.

The petition for certiorari assigned error on the ground that the judgment was contrary to law and to the evidence. No reason was given why the judgment was contrary to law.

Officer Pearl Martin, a City of Atlanta policeman and witness for the city, testified: "I saw him lying in that prone position like he [the accompanying officer] said and went over and had to shake him twice, tapped him on the shoulder and shook him a little, and he sprang up and grabbed me here (indicating his shoulder) struck me on the side of the face, and I ducked and when I did I had to hit him with my fist, and knocked him up on the porch. Then I saw what was going to happen and got my blackjack out; in the struggle I lost it and it fell down on the floor but I retrieved it after this officer came over. Q. Then did you arrest him? A. Yes; we had to subdue him in order to get him in the automobile. One thing he did say to me when he woke up, he said, 'What the hell is going on here?' and I said, 'It's the police.' He said 'God damn the police,' and he swung up an grabbed me. Q. It is true you were passing along with the other officer and happened to see the defendant lying on the porch? A. Yes, after this colored woman told us about his being there . . his feet were out in the alley. The steps are very short and his head was on the porch and his feet in the alley; he was down the porch steps *in a prone position on his back*." (Italics ours.) Another officer, who was with Martin on the occasion in question, substantiated his testimony and also testified: "Well, I looked over and asked the woman, did he live there, and she said, 'No, he didn't.' Thereupon Officer

Martin got out of the car and approached the man to see what was the matter with him. We didn't know. A lot of times we find them drunk or stabbed, and he tapped the fellow on the shoulder and said, 'Hey boy, this is the police; what's the matter with you?' This officer further testified: "He [the defendant] was very disorderly all the time, cursing the God damn police, and told me he was going to kill me, refused to get in the car, resisted arrest in every way possible; kicked me on the leg, and when we got to the car it started all over again." This officer also testified: "If he [the other officer] had failed to go over and investigate it, it would have been a gross neglect of duty to see a person lying in a prone position like that, and in my capacity as an officer to pass without investigating it; and we had no intention at that time of locking him up." There was other evidence that the defendant was drunk. The defendant's statement is as follows. "I got off from work at five o'clock or five-thirty and came through town and bought two records at a record shop, and went from there to a whisky store and bought a half pint of Shenley's Red Label and went by my sister's, left there, and went home and taken a jigger of that whisky at home, and left home and my wife and two children and went back around to my sister's; so I sat down in the glider and went to sleep, and when I woke up I never did get to myself, and they were beating me across the face and on the head, and the only thing I remember is when they were sewing my head up that night in Grady [Hospital] is the only thing I remember." The defendant introduced witnesses who corroborated this statement. The recorder, however, seems to have accepted the testimony of the witnesses for the city and found the defendant guilty as charged. We think that the evidence authorized such a judgment of guilty. See, in this connection, *Holcombe* v. *State*, 54 *Ga. App.* 213 (187 S. E. 599). It follows, therefore, that the court did not err in overruling the certiorari, as no error of law appears.

*Judgment affirmed. Gardner J., concurs. Townsend, J., concurs specially.*

TOWNSEND, J. concurring specially. It is my opinion that the officers should have driven on their way upon ascertaining that

the woman who lived at 28 Plant Street had no complaint against the defendant. At this time he was violating no law (see *Ramey* v. *State*, 40 *Ga. App.* 658 (151 S. E. 55), or ordinance, and the officers had already ascertained that he was not injured in any way. I think that by going over to the defendant and shaking him, the police officers committed an unlawful trespass upon the person of the defendant. This resulted in such retaliation on his part that it led to a brutal beating of the defendant by the officers, which apparently exceeded in force that required to defend themselves against the attack of the defendant. The evidence, therefore, in my opinion demands a finding that the police officers, in the first instance, committed a trespass on the defendant. However, construing the evidence in its light most favorably to support the judgment, as indeed we must, it is sufficient to show that the retaliation of the defendant exceeded the provocation of the officers and that its excess was unjustified. It was also violent, turbulent, quarrelsome, boisterous, and disorderly. His language was profane and his conduct tended to disturb the good order, peace, and dignity of the city.

The conduct of the officers on this occasion is not a proper subject of review by this court. It is, however, well for all public officers, whether they be judges or police officers, to remember that part of the Bill of Rights of the State Constitution contained in art. I, sec. I, par. I (Code Ann., § 2-101) as follows: "Public officers are the trustees and servants of the people, and at at all times, amenable to them." And fully realizing the right of and need for police officers to protect themselves from assault and injury against persons attacking them, they should, nevertheless, be mindful also of that part of the Bill of Rights contained in art. I, sec. I, par. 9 (Code Ann., § 2-109) as follows, "nor shall any person be abused in being arrested, while under arrest, or in prison."

Since the judgment is not contrary to law and is supported by some evidence, I concur specially in the judgment of this court affirming the judgment of the superior court overruling the petition for certiorari.